# THOMAS C. FORBES
## *v.*
## MOSES T. HALL.

1. RESULTING TRUSTS. When a resulting trust is established, it is the duty of the court to decree the title out of the trustee, and vest it in the *cestui que trust*, if the case is made out.

2. TRUSTEE. Entering a tract of land at a government land office, with knowledge of a prior entry by another, makes the relation of trustee and *cestui que trust* under certain circumstances.

3. Land officers cannot, by any act of their own, defeat a legal entry by one person, and yield the land to another on a subsequent entry, who had notice of the first' entry.

4. The person making the second entry has no claim on the person who made the first entry, for his purchase money, or for the taxes he may have paid on the land.

5. A bill filed, to compel the second purchaser to yield up the legal title, will be sustained without proof of a demand for a deed before bill filed, though want of a demand will subject complainant to the costs.

WRIT OF ERROR to the Circuit Court of McLean county; Hon. JOHN M. SCOTT, Judge, presiding.

The facts of the case presented by the record are briefly these : On the 26th of September, 1853, the south half of the northeast quarter of section five, town. 22 N., R. 6, in the county of McLean, was the property of the United States, known as " congress land," and subject to entry at the United States land office in Danville. On that day George Cheeny entered and paid for this tract of land at the land office, and on the twenty-fourth of March, 1854, conveyed it to Hall, the

defendant in error. Hall went into possession, and has ever since occupied it, claiming it under and by virtue of this entry and conveyance to him. On the 23d of December, 1854, the commissioner of the general land office, for the alleged cause that this tract had been selected by the State as swamp land, under the act of September 28, 1850, cancelled the entry. On the 15th of January thereafter, Forbes, the plaintiff in error, was permitted to enter this tract at the land office, and a patent was issued to him for the same.

When Cheeny arrived at Danville to enter this land, the office was closed, and he made out in writing his application, and left it and the money with Forbes to make the entries, and took from Forbes a receipt as follows: Received, Danville, Ill., August 31, 1853, of George Cheeny, three hundred dollars to enter the following land: (here described, and among them the tract in question,) as soon as the same can be done at the office. Thomas C. Forbes. On the 24th of September, thereafter, Forbes sent the receipt of the land office to Cheeny for the entry of this tract among others. Some time in the winter of 1855, Cheeny received a letter from the land office notifying him of the cancellation of his entry, and soon after received a letter from Forbes, informing him that he, Forbes, had entered the land and that he, Cheeny, could have it for one hundred and fifty dollars. Cheeny answered the letter, thanking Forbes for his kindness in entering the land if it had to be entered again. Wished to know the particulars, and what it took to enter it, and his charge for his trouble, when the money would be forwarded. Cheeny said that he never had any other offer but the one spoken of, and never agreed to buy the land of Forbes. That Forbes knew he wanted the "eighty," and that he always intended to hold it by the first entry; that he had never withdrawn the money for the first entry and always claimed the land under it. The defendant Forbes read in evidence a patent for the land and tax receipts for the taxes of 1855–6–7–8 and 1859.

The bill was filed by Hall to compel Forbes to convey to him the legal title.

In his answer, Forbes does not deny any of the material facts set forth in the bill, but relies on the fact of the cancellation of the entry of Cheeny, and the legality of his subsequent entry.

It was shown in the proofs that the entry was not cancelled, because this particular tract had been selected as swamp land, which was not the fact, but another tract, in the same entry, had been so selected.

The court decreed as prayed for in the bill, and the case is brought here by writ of error, assigning this decree as the only error.

Messrs. GLOVER, COOK & CAMPBELL, for the plaintiff in error, made the following points:

I. The defendant in this case filed his *sworn answer*, as required to do by the prayer of the bill, and the *only evidence* tending to disprove it was that of *one witness* without any corroborating circumstances.

Hence, the decree was not warranted by the evidence, as a sworn answer can only be overcome by the evidence of *two witnesses*, or of one witness and corroborating circumstances equivalent to another. *Trout* v. *Emmons*, 29 Ill. 433; *Myers* v. *Kinzie*, 26 id. 36; *Morrison* v. *Stewart*, 24 id. 24.

II. The evidence does not show a state of facts which would create a resulting trust in favor of the complainant, for he did not pay the consideration money for the land or any part of it. *Stephenson* v. *Thompson*, 13 Ill. 190; *Alexander* v. *Tauns*, 13 id. 225; *Perry* v. *McHenry*, 13 id. 227; *Williams* v. *Brown*, 14 id. 201; *Greene* v. *Cook*, 29 id. 193; *Loomis* v. *Loomis*, 28 id. 454; *Lear* v. *Choteau*, 23 id. 39; *Franklin* v. *McIntyre*, 23 id. 91; *Getman* v. *Getman*, 1 Barb. Ch. 499; *Botsford* v. *Burr*, 2 Johns. Ch. 405; *Steern* v. *Steern*, 5 id. 1; *Seward* v. *Jackson*, 8 Cow. 406; 4 East, 577; 7 Cranch, 176.

In all of the above cases the doctrine is plainly laid down that "A resulting trust can only arise from the fact that a

purchase is made in the name of one while the purchase-money belongs to another."

In the case at bar, the entry of the lands was made by Forbes, with his own money, without any agreement of any kind whatever that the entry was made for any person except himself.

III. But if the facts were such that a resulting trust could possibly arise, the court erred in ordering the defendant to convey to complainant without being in any way repaid for the money laid out by him in the entry of the land and the payment of taxes thereon for five successive years; and surely there could be no equity in such a decree.

If the bill had prayed that the transaction be treated as a mortgage, and complainant be allowed to redeem, no convey-ance would have been ordered without previous payment of the amounts expended on the land by defendant below, and we are sure no precedent can be found for such a decree in any case. *Davis* v. *Hopkins*, 15 Ill. 520; *Reeve* v. *Strawn*, 14 id. 94.

And in the case of *Currie* v. *Cowles*, 6 Bosw. 452, the court held that an attorney who held lands in trust for his client was entitled to be paid for his services in perfecting the title. *Gilmore* v. *Johnson*, 29 Geo. 67.

Messrs. R. E. WILLIAMS and A. B. IVES, for defendant in error, in reply:

The answer does not put in issue any material fact stated in the bill.

What is the case made by the bill? It is not a case of an attempt to enforce a resulting trust, as supposed by the counsel for plaintiff.

The bill states, that George Cheeny, on the 26th of September, 1853, entered the land in the bill described, and at the same time entered another 40 acre lot. On the 21st of March, 1854, Cheeny conveyed the land, in the bill, to plaintiff, (defendant in error.) That, on the 23d of December, 1854,

the whole entry was, by mistake, canceled. Afterwards, plaintiff in error was permitted to enter land in bill, and got a patent to same. That defendant in error was in possession before plaintiff's entry; that plaintiff had notice of defendant's rights; that he holds the legal title in trust for defendant, who is in equity, the owner.

The answer admits all the material facts of the bill; admits the entry by Cheeny, as stated in the bill, the cancellation of this entry, and the subsequent entry by plaintiff. Says he does not know of the conveyance by Cheeny to defendant, but this is proved on the trial by the deed; and Cheeny swears that defendant took possession of the land in the spring or summer after the entry by him, and has been in possession ever since. The land was in fact entered by Hall, or with his money. Hall wanting this land, had sent the money with Cheeny to enter it for him. Cheeny had to make out the application in his own name; he could not make the entry at that time, and left the applications and money with Forbes to make the entries for him. Forbes did make the entry for Cheeny, and Cheeny conveyed the land to Hall.

The material facts in the bill are, that Cheeny first entered the land, and that Forbes, at the time of his entry, knew of this previous entry. Both of the facts are admitted by the answer, and are fully proved besides.

The first point entirely fails.

The second point fails, because this is not an attempt to enforce a resulting trust. The counsel for plaintiff have wholly mistaken the case made by the bill. There is not, in the whole bill, nor in the whole case, an intimation of a resulting trust. The case is this: On the 26th of September, 1853, the land, claimed in the bill, belonged to the United States, and was subject to entry at the Danville land office. On that day Cheeny entered and paid for the land, and afterwards conveyed it to defendant. Defendant soon after went into possession, and ever since has had and still does occupy it, claiming it under and by virtue of this entry. That plaintiff, with full knowledge of this previous entry, and with construc-

tive notice, at least, of Hall's possession, afterward made a second entry of the same land, and got a patent for it. That these facts constitute Forbes a trustee of the legal title for Hall. We do not say that Forbes used our money to make the entry upon which the patent was issued, but we do say, that when he made that entry he had no right to do so, because we had previously entered it, and he knew it; and, therefore, when he has obtained the legal title under such a state of facts, he holds it as a trustee for our benefit. This case is very analogous to the case of *McDowell* v. *Morgan, Jr.*, *et al.*, 28 Ill. 528, and the reasoning of the court, in that case, is strictly applicable to this.

The only question is, was the entry by Cheeny valid, if so, and it has not been abandoned, it must hold the land in equity, although a subsequent entry may have been made, upon which the legal title may have issued; and the holder of that legal title is a trustee of the legal title for the owner of the title under the first entry; *McDowell* v. *Morgan*, above.

There is no pretense that the entry of Cheeny was not legal. It does not become illegal, as to the 80 acres claimed in the bill, although it may have been so as to the other 40 entered at the same time. Suppose the government sold to one of its citizens, 120 acres of land, when it only owned 80 of it, the vendee may, perhaps, abandon the whole contract, if he chooses, because he does not get what he bargained for. But the vendor clearly cannot take back the whole, if the vendee chooses to keep what the vendor had a right to sell. I know of no rule of law between the State and its citizens, in a matter of this kind, different to what is applicable between individuals. This 80 acre lot was clearly subject to entry. We bought it and paid for it, and have never abandoned the purchase, but always claimed the land, and still claim it under our purchase. Forbes had full notice of these rights when he made his entry, and, in the language of this court in *McDowell* v. *Morgan*, we may say he had notice of all the facts constituting our rights, and that is sufficient to make him a trustee of the legal title for us, no matter what his opinion

may have been of the validity of our entry. The case is not one of a resulting trust at all, but the case of one man knowing (for every man is presumed to know the law) that another is the equitable owner of land, acquires the legal title. Equity will always decree him to convey the legal to the owner of the equitable title. So the second point fails.

The third point fails for the same reason, because it is based upon the theory of a resulting trust. As to the taxes, Forbes could get no relief without a cross-bill. He did not file any. The bill says nothing about taxes. The bill makes a case, and the proof sustains it, entitling the complainant to relief; and although the proof may show that the respondent is entitled to some relief, yet he cannot have it upon the proof; he must file a cross-bill. *Mason* v. *McGirr*, 28 Ill. 322; *McConnel et al.* v. *Smith, adm'r*, 23 id. 611.

Hall's equity to this land is complete, because he bought it, paid the purchase-money entire, went into possession, has never abandoned his purchase and still claims it. Forbes knew these facts when he made his entry and obtained his patent, therefore he is simply a trustee of the legal title for Hall. All these facts are fully shown by the answer and proofs. Forbes admits, in his answer, his knowledge of this first entry, and the proof shows that, in fact, he made it himself as agent for Cheeny, so the answer and proofs fully sustain the main facts of the bill.

It is true the answer denies any demand of title before suit, and the proof does not overcome this part of the answer; but this can only be material on a question of costs, and the court decided that against complainant below by decreeing all the costs against him.

The bill, says our entry, was canceled by mistake. This is shown from the fact that the cancellation was wrong and against law. It being against law, will be presumed to be done by mistake. No law is shown authorizing the cancellation of this entry of the 80 acre lot, and I apprehend none can be shown. The land was subject to Cheeny's entry, and the entry was legal; has never been abandoned; and the

government had no right to cancel it, and the cancellation is a nullity. *McDowell* v. *Morgan.*

Cheeny's entry, even, as to the 40 acres, was afterwards affirmed by act of congress. This made Cheeny's entry good as to the whole 120 acres, and it never was bad as to the 80 acres claimed in the bill.

Even if Cheeny's entry had been properly canceled as to the 80 acre lot, Forbes' entry was illegal. The cancellation of the entry was made on the 23d December, 1854, and on the 15th January, 1855, only 23 days afterwards, Forbes' entry was made. It is a law and regulation of the department, as old as the year 1810, that, after a tract of land has, for any cause, been once withdrawn from market, it cannot be again put into market without previously having been advertised for 30 days, and then must be offered at public auction before it can be subject to private entry.

Now, this land had certainly been withdrawn from market by the entry of Cheeny, and even if this entry had been properly cancelled, the land must afterwards have been advertised for 30 days, and then offered at public auction before it could have been entered by Forbes at private entry. This was not done. The pretended entry was only 23 days after the pretended cancellation, so it was clearly illegal, and Forbes took nothing by this entry. Afterwards, the confirmatory act of congress, above referred to, was passed (Forbes having acquired no right in the land by his illegal entry.) Cheeny's whole entry, of the 120 acres, was fully restored. This follows, upon the supposition that the cancellation of the 80 acre lot was even proper (which it was clearly not), so that in any event or in any light that the case may be viewed, Cheeny's entry of the 80 acres is good, has always been good, and carries the equitable title.

We think the case of *McDowell* v. *Morgan* is exactly in point, and is conclusive of this case. There is no error in the decree, and the same should be affirmed.

Mr. JUSTICE BREESE delivered the opinion of the Court:

The counsel for the plaintiff in error have argued this case as though it was an attempt to establish a resulting trust. Nothing of that kind is claimed. The question is, has Hall the superior equity as against the legal title? If he has, then it was the duty of the court to regard Forbes as the trustee of that title for the benefit of Hall, and to decree it out of him for Hall's benefit.

The facts are uncontroverted. Forbes knew of the entry by Cheeny, in fact, he paid Cheeny's money into the land office for the land, and took the receipt in Cheeny's name. This entry was never abandoned, and though canceled, by mistake, when the mistake was corrected Cheeny's entry was in full force. The subsequent entry by Forbes cannot defeat Cheeny's right thus legally acquired. Of Cheeny's rights Forbes had full notice, and that is sufficient to make him a trustee for Cheeny, or for his assignee, Hall. The land officers, the entry being legal, could not by any act of theirs divest the equitable title acquired by Cheeny without his consent, or the consent of his assignee, and the right exists in Hall to pursue the legal title into the hands of Forbes who acquired it with full notice. The case of *McDowell* v. *Morgan et al.*, 28 Ill. 532, is "on all fours" with this case. The plaintiff in error cannot be permitted to hold the legal title he has acquired against the older equity of defendant in error.

Though the answer of plaintiff in error was sworn to, yet, as it does not deny any material allegation in the bill, the doctrine that it must be overcome by two witnesses has no application. As to the denial of a demand for a conveyance before suit brought, this will inure to the benefit of plaintiff in error, so far as to relieve him from the payment of costs in the court below, but no farther.

We are not disposed to allow the claim of the plaintiff in error to the purchase-money and taxes, he avers in his answer he has paid on this land. It is very evident that the plaintiff in error, contrary to equity and good conscience, with full knowledge of all the facts and circumstances attending the entry and purchase of the land by the defendant in error, bought to

deprive the defendant of it most unjustly, and in a mode thoroughly tinctured with fraud. We do not, therefore, think he is in a position to claim the equitable interposition of this court, or that such conduct furnishes a just foundation for the relief he seeks.

The averment in the answer that complainant did not make any demand for the title before suit brought, and no proof produced that he did make such demand, can have no other effect than to relieve the plaintiff in error from the payment of the costs, which the Circuit Court did, by adjudging the costs against the defendant in error.

Perceiving no error in the decree, it must be affirmed.

*Decree affirmed.*