## CYRUS ALDRICH *et al.*
### *v.*
## STEPHEN ALDRICH *et al.*

1. GOVERNMENT LANDS—*entry of.* When a person enters land at a Government Land Office, and pays for it either by a land warrant or in money, he acquires precisely the same equitable rights that he would in a similar transaction with a private individual. The government is selling simply as a land proprietor, and has no right, at its own mere discretion, and without just cause, to cancel its contract. If it does so, and issues the patent to another person having notice of the rights of the first purchaser, a Court of Chancery will direct the conveyance of the legal title to the rightful owner.

2. SAME—*cancellation of entry.* If the government officers cancel an entry *semble*, that the courts will presume, in the absence of proof, that such cancellation was upon valid grounds. But if it affirmatively appear that such cancellation was wrongfully made, the courts will disregard it.

3. SAME—If, after land has been entered under a military land warrant, the Commissioner of Pensions cancels the warrant. and thereupon the Commissioner of the General Land Office cancels the entry, and subsequently the Commissioner of Pensions rescinds the order cancelling the warrant, such rescission is evidence that such order of cancellation and the order cancelling the entry in consequence of the cancellation of the warrant, were both improperly made.

WRIT OF ERROR to the Circuit Court of La Salle county; the Hon. M. C. HOLLISTER, Judge, presiding.

This was a bill in Chancery, filed by the defendant in error at the June term, 1858, against the plaintiff in error to compel a conveyance of the legal title of a tract of land. There was a decree for the complainant, and the defendant sued out a writ of error. The facts appear in the opinion.

Mr. GEORGE CAMPBELL for plaintiff in error.

The only error assigned is, that the decree was erroneously rendered, and in sustaining this position we insist—

1. That the allegations of the bill, if taken as true, are not sufficient in law to sustain the decree.

The gist of the bill is—

*First,* That the entry of the land by Joscelyn was cancelled by the Commissioner of the General Land Office, *and was never restored,* so that Cyrus Aldrich, or any other person, had a right to enter the land by paying the purchase money upon a legal application made.

*Second,* That the land warrant certificate was by the Commissioner of Pensions restored as valid, so that the heirs of Joscelyn were entitled to the same rights under it that they would have if it had never been cancelled or located; and they could have made application under this warrant to locate any quarter section subject to private entry either the one in controversy or any other.

*Third,* That the heirs of Joscelyn never did make application to re-locate the warrant upon this quarter section, or any other, and therefore have no rights either in law or equity thereto.

*Fourth,* The bill alleges that upon the cancelled certificate being restored as valid and sent to the Dixon Land Office, it was the duty of the officers of said land office to have restored the location of said warrant upon said land in the name of said Wm. S. Joscelyn.

This is not an allegation of law, and is not the law :

1.   Because the entry could not be legally restored in the name of a dead man.

2.   Because no one except the Commissioner of the General Land Office had authority to rescind the order cancelling the entry.

3.   Because no officer of the Dixon Land Office could legally re-locate the warrant except upon proper application by the owners thereof, including an affidavit that the land was then vacant and unoccupied.

4.   The decree was not warranted by the evidence.

3

The bill called for answer under oath and sworn answer was filed, and there is no material fact set up by the answer that is contradicted by the evidence of two witnesses or by one witness, and corroborating circumstances equal to another. *Trout* v. *Emmons*, 29 Ill. 433 ; *Myers* v. *Kenzie*, 26 Ill. 56 ; *Morrison* v. *Stewart*, 24 Ill. 24.

Messrs. LELAND & BLANCHARD for defendants in error.

The case is an ordinary one of a prior entry by one, and subsequent patent improperly issued to another, when the one making the prior entry and receiving a contract for a patent, should have obtained the promised patent, and when one who improperly obtained the legal title is to be held as a trustee, who should by conveyance be required to place the legal estate in the holder of the equity. It is not a case of resulting trust at all, but a question of priority between two, each of whom purchased with his own funds.

It is also alleged that William C. Joscelyn was dead when the cancellation of his entry was rescinded and the entry restored as valid. We do not perceive how the fact of his death could deprive William C. Joscelyn's heirs of their equitable right in the entry made during the life of the ancestor. The old certificate of entry which had been cancelled during the life of Joscelyn was restored as valid, and whether the restoration was during his life or after his death does not matter. No new certificate of entry was necessary. The old one remained as though it had never been cancelled, and if a patent had been issued on it to William C. Joscelyn after his death, it would have passed the title to his heirs. Brightly's Digest of U. S. Statutes, p. 455, Sec. 20.

The duties of Commissioner of Pensions in relation to military bounty lands are such as may be assigned to him by the Secretary of War, and as he has acted in cancelling and restoring the entry of Joscelyn, it is to be presumed he did his duty. If it is his duty to issue the warrant certificate, he ought also to cancel it. Brightly's Digest, p. 738, Sec. 1 ;

Ibid, p. 104, Sec. 5.  The defendant Aldrich or his grantee Morgan is entitled to get back the money paid the Government, and because the purchase was void on account of the prior entry.  Brightly's Digest, 484, Sec. 147.

There is no denial in the answer requiring the evidence of two witnesses or one, and circumstances, &c., to overcome it. Morgan merely says to the allegations that he is not advised, and requires proof.

It is said that the entry of the land by Joscelyn was cancelled, but never restored, and therefore Aldrich had a right to purchase.   We do not understand that the rescinding an order cancelling a military warrant certificate already located entitles the holder of the warrant to locate on another tract of land at all.   It necessarily makes valid the location made under it while it was valid and uncancelled, and the warrant with the location attached as incident to it is restored to the condition in which it was when the cancellation took place. When it was cancelled, and information of the fact was transmitted to the land office at Dixon, an entry was there made of this fact, and when the cancellation was rescinded, information of this fact was transmitted to the land office, and a minute of the recission of the cancellation should have been entered upon the books at said land office.   The location of the warrant and the original entry of the land would then appear at Dixon as well as at Washington.   A court of equity will treat that as done which ought to have been done.

Mr. Justice Lawrence delivered the opinion of the court:

On the 25th of August, 1849, one William S. Joscelyn, as the assignee of Martin Wiggins, located a military bounty land warrant at the Dixon Land Office, on a quarter of land situate in La Salle county.   On the 15th of May, 1851, the Commissioner of Pensions cancelled said warrant as fraudulent, and on the 5th of November, 1851, the Commissioner of the General Land Office cancelled the entry, and the certificate was returned to the land office at Dixon.   On the 28th

of May, 1853, the order cancelling the warrant was itself rescinded by the Commissioner of Pensions, and the warrant restored as valid, but the order cancelling the entry was not rescinded. On the 2d of June, 1853, the warrant and the order restoring it were sent to the Land Office at Dixon. On the 23d of January, 1854, Cyrus Aldrich, one of the appellants, entered the land and received a patent for it April 26th, 1856, and on the 9th of April, 1858, conveyed it to Harvey Morgan, his co-appellant. Aldrich was Receiver of the Land Office at Dixon from the Spring of 1849 to the Spring of 1853. Joscelyn died in October, 1851, and the appellees, Stephen H. Aldrich and Irwin Palmer, claim land under conveyance from his heirs. The land since 1854 has been occupied under the Joscelyn title, the first improvement having been made at that time. It was in cultivation when Cyrus Aldrich conveyed to Morgan. The appellees, Stephen H. Aldrich and Irwin Palmer, being thus in possession and claiming title under the Joscelyn entry, but the legal title being in Morgan through the patent to Cyrus Aldrich, filed their bill against the latter for a conveyance. The Circuit Court decreed in their favor, and the defendants have brought the record. to this court.

When a person enters land at a Government Land Office and pays for it, either by a land warrant or in money, he acquires precisely the same equitable rights that he would in a similar transaction with a private individual. The Government in making the sale is acting as a land proprietor, rather than in a strictly governmental capacity. It has no more right, at its own mere discretion, and without just cause, to cancel its contract than an individual would have to do the same thing. It is true, if the Government chooses to do this, and withholds the patent, the purchaser has no remedy, as the courts have no power to compel the patent to be issued. If, however, the Government issues the patent to another person, who takes it with notice of the rights of the first purchaser, then the matter falls under the jurisdiction of a Court of Chancery, and it will compel a conveyance of

the legal title to the rightful owner.   There is this difference, it is true, as a matter of proof, between transactions of this sort occurring between an individual and the Government, and similar transactions between individuals.   If the Government officers cancel the entry, as was done in the case at bar, the courts, in the absence of any other evidence, will presume in favor of the official action of the Government officers, that such cancellation was made upon just and valid grounds. If, however, it affirmatively appears that such cancellation was illegally and wrongfully made, the courts will disregard it.   We have been referred to no act of Congress, and we are not aware of any, which gives the Commissioner of Pensions a discretionary power to cancel land warrants, or the Commissioner of the General Land Office any such power to cancel certificates of entry.   When the last named officer withholds a patent, and orders an entry to be cancelled, because a fraud has been practiced upon the Government, he does this on the same grounds upon which an individual vendor of land would withhold his deed if purchase had been accomplished by fraud.   The Commissioner, in such cases, is not exercising that species of judicial power, under the authority of law, which would make his acts conclusive in all collateral proceedings, as in the case of contests about preëmption rights.   He is simply seeking, as an officer of the Government, to protect it from frauds, when, acting perhaps *ex parte* and without notice, he orders an entry to be cancelled.   If his assumption of the existence of fraud is well founded, his action is very proper.   It will be sustained, when questioned in the courts, as the action of an individual would be, who has repudiated a contract on the ground of fraud, if fraud can be shown to exist.   But it can not be said that he is exercising judicial power, and we go quite far enough in giving to his official acts of this character the benefit of a *prima facie* presumption.   We do even this from the mere necessity of the case, because these questions never come before the court in contests between the Government and an individual, but only in cases where the legal title has

passed out of the Government, and the person claiming under it would often find great difficulty in showing the ground of the Government action. He is therefore entitled to the benefit of the presumption. In support of these principles we refer to *McDonell* v. *Morgan*, 28 Ills., 529, and *Forbes* v. *Hall*, 34 Ill., 159.

Tried by these principles, this case is of easy determination. The fact that the Commissioner of Pensions rescinded his first order cancelling the warrant is sufficient evidence that that order was illegally made. That cancellation having been illegal, and the cancellation of the entry equally so, being founded upon that of the warrant, it is plain that Joscelyn lost no rights under his entry in consequence of such illegal acts of the Commissioner of Pensions, and the Commissioner of the General Land Office. Neither did Cyrus Aldrich or Morgan acquire any rights, as against the equitable estate of Joscelyn's heirs and their grantees. Aldrich was Receiver in the Dixon Land Office at the date of Joscelyn's entry, and for years thereafter, when the entry was the subject of correspondence, and must have known that such entry was made. It avails nothing to·say that he also knew of its cancellation, and did not know that·the cancellation of the warrant had been rescinded, because, being once advised that the entry had been made, if afterwards he thought proper to procure the patent by a new entry, acting in the belief that the cancellation had been properly ordered, he nevertheless acted in this at his peril. He must be taken to have known the law. He knew, then, that if the order of cancellation was illegally made, and Joscelyn could show that fact, the latter would lose no rights in consequence of it. He knew that whatever claim he might acquire by his entry, would depend, as a matter of fact and law, upon whether the cancellation was legal or illegal. He simply speculated upon his faith in the legality of the Commissioner's acts. They prove to have been illegal, and therefore his naked legal title was held by him subject to the superior

equity of the Joscelyn entry.   Neither is Morgan in any better position.   When he bought of Aldrich there was open and visible possession of the land under the Joscelyn title. He bought, therefore, with notice of that claim.   The decree was right and is affirmed.

*Decree affirmed.*