EDWARD A. IVES, BY HIS NEXT FRIEND v. EDWIN N. ELY.

57  569|
98   66|

*Swamp lands—Rights of one who entered pending their transfer to the State.*

1. A bill to restrain an action of ejectment was properly dismissed where plaintiff held a Federal patent to the land that had been granted him on the strength of equities arising out of his having entered it thirty-one years previously and twenty-one before the defendant in the action and complainant in the bill had gone on to it,—though the latter had continued in possession in spite of notice that it was not open to entry.

2. How. Stat. §§ 5384–5 authorizing the State Treasurer to receive from the General Government the proceeds of swamp lands sold by it after the grant of all such lands to the State in 1850, amounted to a waiver of the State's claim to all such lands as against such intermediate buyers.

3. An entry of swamp land in good faith while the title to such lands was in question as between the State and Federal governments was sufficient to give the person making such entry an equitable claim to the land which the Commissioner of the General Land Office could not extinguish without the claimant's consent or some proceeding against him.

4. The surrender on demand of a certificate of entry upon the cancellation of a land sale cannot estop the holder from afterwards asserting his equities in the land; nor can it be relied upon by a stranger claiming adversely to him.

5. The equitable title of one who has made an entry of public land is, when confirmed by Act of Congress, the highest evidence of title until otherwise adjudged by a court of last resort.

Appeal from Eaton.    (Hooker, J.)    May 1.—Sept. 29.

BILL to clear title.    Complainant appeals.    Affirmed.

*Sagendorph & Powers* for complainant.

*H. H. Cobb* for defendant.

SHERWOOD J.  This case is well presented in the statement thereof made by Judge Hooker, contained in the record, and before whom it was heard in the Eaton circuit in July, 1884, and which is as follows:  The controversy in

this case arises over a parcel of land which, in the original
United States survey notes, is marked swamp land, lying in the
county of Eaton. Subsequent to the Act of 1850, granting
all swamp lands to the State, viz., in the year 1852, Horatio
I. Lawrance entered the land at Ionia, receiving the usual cer-
tificate issued upon a cash entry. In 1854 the department
canceled the sale, receiving back the certificate and refund-
ing to Lawrance his money. In 1856 these lands were
included in a list selected and reported to the State as swamp
lands. In 1861 Lawrance applied to the Commissioner of
the State Land Office to purchase from the State this parcel
of land, claiming his right to purchase by reason of his
attempted purchase at Ionia. He was unsuccessful in this,
it being stated upon the trial that no patent had issued to
the State for the land. Subsequently, to wit, August 13,
1883, Lawrance procured a patent from the Federal govern-
ment on the strength of equities arising from his location in
1852. November 20, 1883, Lawrance conveyed the prem-
ises to Ely for a valuable consideration. Ely commenced
ejectment against the complainant, Ives, whereupon this suit
was instituted to stay the ejectment suit and quiet the title.

Complainant's claim to the premises is based upon the
following facts, viz.: Prior to the year 1873 he resided on
premises belonging to his wife, adjoining or near the prem-
ises in controversy. In the early spring of that year he
entered upon the land and began clearing, and some time in
June went to the land-office and attempted to make proof
that he had made the necessary improvements, and taken the
required steps to take up the land as a homestead under the
Federal homestead law. As a matter of fact he had done
some clearing, and had partially erected what one of his wit-
nesses describes as a pig-pen or hen-coop, which was never
finished, upon the land, but had not moved upon or in any
way lived upon it, although the affidavit filed asserts some-
thing of the kind. There is no proof in the case to show
whether the land was taken under the honest belief that it
was subject to location. And when, within sixty days after
his alleged entry upon the land, he was informed that it was

not subject to entry, he persisted in his claim, keeping possession through his tenants, who took possession of a school-house, erected by his consent for temporary use in the fall of 1873. This possession has been continuous ever since. No improvements except clearing have been made, and the proof indicates that the timber has been stripped from the place, and that were it to-day in the condition in which he found it, it would be worth all that it now is. The complainant, in August, 1873, being a short time after his visit to the Ionia land-office, filed with the State Land Commissioner his claim for relief under the Act of Legislature of 1867, being How. Stat. § 5387. The State issued no patent to either him or Lawrance. He had possession of the premises.

The defendant Ely claims that while it is true the complainant has possession of the premises, such possession is not only based upon his own wrong, but was never acquired in such way as to entitle him to the relief afforded in such cases by the Act of 1867 referred to ; that complainant never took the land under an honest belief that it was subject to his location ; that the complainant's entry was a piece of sharp practice to enable him to obtain priority of right to a deed from the State under How. Stat. § 5386, (see margin);[1] that however this may be, his entry was a fraud upon the government, and an attempt to prostitute the Homestead Act to the purpose of acquiring title to a parcel of land without paying for it, or performing the conditions required by law. The defendant also denies that Edward A. Ives did any act

---

[1] § 5386. *The People of the State of Michigan enact,* That in all cases where lands have been purchased as government lands at any of the United States land-offices within the State of Michigan, and such purchase has afterwards been set aside and canceled, in consequence of the lands so purchased having been found to be swamp lands, the purchaser, his heirs or assigns, may at any time before such lands are offered for sale by the State, or before said lands are sold to any other person, on presentation of a certificate of such purchase-and cancellation from the register of the land-office where such purchase was originally made, to the commissioner of the State Land Office, be entitled to purchase such lands of the State at the price of one dollar and twenty-five cents per acre, subject to the condition that such purchaser or purchasers shall not have any claim against the State for draining such land ; and such land

whereby he has acquired any right upon the lands in ques-
tion as against the State of Michigan, the United States, or
as against the defendant, and avers that neither the com-
plainant nor any of his family have ever lived upon the
premises, or paid any taxes thereon, or done any other act
whereby they should have or have any equitable claim upon
the land, and that he never in good faith attempted to obtain
a legal title to the same, either by prescription or in any
other manner. Proofs were taken by both parties, and on
hearing complainant's bill was dismissed, and he now asks a
review of the case in this Court.

The record shows Lawrance desired to enter the land in
question long before the grant of swamp lands was desig-
nated and perfected in the State, and actually made the
entry at the government office in Ionia, paid his money
therefor, and received his certificate of entry as early as 1852.
The land, however, was withdrawn from entry at the gen-
eral office. It was withheld for a long time, and suffered to
go to the State under the swamp-land grant, and with this
understanding the certificate of sale to defendant was can-
celed by the department, and his money returned to him.
These intervening sales between the time of the passage of
the Act, and before the land was selected and approved to
the State, were many of them canceled under the decision
of the department, and money refunded. This cancellation
seems to have been without notice to the defendant, and not
satisfactory to him as well as to many others, and the right
to make such cancellation ex parte was seriously doubted.
*Merrill v. Hartwell* 11 Mich. 200 ; *Johnson v. Ballou* 28

purchased of the United States shall not be offered for sale by the State
until the expiration of two years from the passage of this act ; and all
persons who have in good faith, at any time since the twenty-eighth of
September, eighteen hundred and fifty, settled upon and made valuable
improvements on any oftthe swamp lands, with the intention of securing
the same under the pre-emption laws of the United States, and shall file
with the Commissioner of the State Land Office sufficient evidence of said
settlement or improvement, and intention, prior to their being offered
for sale, such person, his heirs or assigns, shall also be entitled to pur-
chase such land at one dollar and twenty-five cents per acre: *Provided*,
That nothing in this act shall be construed to affect the legal rights of
any suit or claims now pending, either in law or equity.

Mich. 380; *Stark v. Starrs* 6 Wall. 418; *Shepley v. Cowan* 91 U. S. 337; *Carroll v. Safford* 3 How. 441–461. Congress, however, for the purpose of settling the question, and doing justice to purchasers, on the second of March, 1855, passed "An act for the relief of purchasers and locators of swamp and overflowed lands," in which it is enacted " That the President of the United States cause patents to be issued as soon as practicable to the purchaser or purchasers, locator or locators, who have made entries of the public lands claimed as swamp lands, either with cash or with land-warrants, or with scrip, prior to the issue of patents to the State or States," etc.; and to make secure that the Act shall be made to apply to all cases, the following claim is added : Any decision of the Secretary of the Interior or other officers of the government of the United States to the contrary notwithstanding. 1 Lest. Land Laws 248 : 10 Stat. at L. 634.

Previous to this, however, the State of Michigan showed itself equally anxious to protect these intermediate purchasers. In 1853 the Legislature passed an act authorizing the State Treasurer to receive from the general government the proceeds of swamp-land sales, thereby consenting to sales, or, rather, confirming such sales as might, for any reason, have been made by the United States. How. Stat. §§ 5384, 5385. After the passage of this act, and in the month of October, 1853, the Commissioner of the General Land Office at Washington prepared lists of the lands transferred, or to be transferred, to the State under the grant according to its terms, and made his certificate thereto as follows: "The lands embraced in the following lists are hereby approved to the State of Michigan, under the Act of Congress approved September 28, 1850, *subject to any valid legal claim that may exist thereto.*" The act of 1853 continuing in force as the expression of the Legislature of Michigan that the rights of intermediate purchasers from the United States should be respected, and that the State should have recourse to the United States for any indemnity which might be proper, and the Act of Congress above referred to, substantially in letter and spirit, according to the expressed will and desire of the

State in the premises and the several other acts relating to
these lands and the rights of these intermediate purchasers,
passed by the State and general government,—as is well
said by Mr. Justice Graves in *Dale v. Turner* 34 Mich. 405,
a case quite similar to this in many respects — " consti-
tuted an arrangement in the nature of a compact or special
bargain that such sales" (as were made in this case to Law-
rance) "should not be invalidated by the operation of the
Swamp Land act, but should be left to be carried out by the
United States as though such act were not applicable, and
that the State should look to the United States for indem-
nity for parcels of swamp lands thus disposed of." Sub-
stantially the State waived its claims to these lands as against
intervening purchasers from the United States by the Act of
1853.

The defendant took at least an equitable title to the land
in question under his entry in 1852. *Aldrich v. Aldrich*
37 Ill. 32; *Brill v. Stiles* 35 Ill. 305; 3 Washb. Real Prop.
(4th ed.) 194. That title the Commissioner of the General
Land Office sought to invalidate without Lawrance's consent,
or any legal proceedings had for that purpose, which could
not be properly done. See authorities cited, and other cases
referred to; *Busch v. Donohue* 31 Mich. 481. The surren-
der of his certificate, when it was demanded by the govern-
ment through one of its officers, was only the act of a good
citizen, and the government would never consent to the act
being set up as estoppel in a court of equity; and what the
government could not do, will certainly not be allowed to be
done by one claiming rights to the land thereunder as against
the defendant. The general government, however, in this
instance, appears to have corrected, although at a late day,
the mistake of its commissioner and agents, and gives to Mr.
Lawrance his patent, and he has restored the consideration
therefor. This patent only evidences the equitable title of
Lawrance confirmed by the Act of Congress of 1855; and
the equitable title of a locator of land, confirmed by the Act
of Congress, is the highest evidence of title, until it has been
otherwise adjudicated by the court of last resort.

It is this sale, thus confirmed, that the complainant asks to have set aside, and places his right to such relief upon the fact that in 1873 he made an unsuccessful attempt to secure the land under the pre-emption laws of the United States, and then filed his claims in the State Land Office under the Act of the Legislature of 1867 for the relief of settlers on swamp land. How. Stat. § 5387. But, under the view we have taken of the case upon the record presented, it is un-. necessary to consider the regularity of the proceedings, as the entry of Lawrance, and the action taken by Congress and the State Legislature long before the complainant attempted location, vested in the defendant the right to the property.

The judgment at the circuit must be affirmed.

COOLEY, C. J. and CAMPBELL, J. concurred.