100   291¹
108    26
100   291
e143  585

# Holmes *et al. v.* The State.

*Bill in Equity to Enjoin Defendants from Mining, &c., upon School Indemnity Lands.*

1. *State cannot be sued by cross bill.*—Const. Art. 1, § 15, providing that the State cannot be made a defendant in any court of law or equity, applies to a cross bill seeking affirmative relief against the State.

2. *Suits brought by the state.*—In suits brought by the State it is not required to give bond or security, or cause affidavit to be made, though the same might be required if the suit were between individuals; and the written direction of the Governor of the State to the attorney of record is a sufficient authority for bringing the suit.

3. *Conclusiveness of proceedings for the selection of school lands.*—In a suit to enjoin the mining and selling of coal from school lands, defendants cannot question the legality of the statute under which an agent was employed by the State to select lands in lieu of lost school lands, nor the regularity of proceedings with the federal government whereby a selection of the land in controversy was approved by the department of the interior and certified by the State.

4. *Decisions of interior department prima facie correct.*—A decision of the department of the interior to cancel inchoate rights acquired by the homestead entry, is *prima facie* correct; and a party who assails the correctness of such a decision must show affirmatively that it is illegal and unauthorized.

5. *Homestead entry subject to reconsideration by land department until patent issues.*—Where a party commutes his homestead entry into a cash entry, and the final receipt for the price is issued to him by the receiver, and the certificate is signed by the register, such receipt and certificate may entitle him *prima facie* to a patent, but do not conclude the land deparment from investigating the truth of the facts on which they were issued, and the *bona fides* of the homestead claim, and from canceling the same if found untrue and insufficient.

6. *Admissions in answer; burden of proof.*—Where a bill avers that a pre-emption claim was canceled by the proper department, and contains a copy of a letter from the assistant secretary notifying the claimant of the order of cancellation, the averment of the bill is admitted by answer which nowhere denies it, but avers that "the claim was never legally canceled," and "that, if such cancellation was made, it was not only without sufficient authority, but on insufficient proof," and in such state of the pleadings the burden rested on the respondent to prove that the order of cancellation was unauthorized and illegal.

APPEAL from City Court of Birmingham.

Heard before the Hon. HENRY A. SHARPE.

Bill by the State of Alabama against Mack Holmes and others to enjoin defendants from digging, mining or selling coal from certain lands described in the bill, and from cut-

[Holmes et al. v. The State.]

ting timber from or in any way impairing the value of, said lands. On the final submission of the cause a temporary injunction, which had been previously issued, was made perpetual and defendants appealed.

The bill alleges that the State had title to the lands in controversy from the United States as school indemnity lands, as is shown by a certified list made an exhibit to the bill, in which the selection of said lands by a duly appointed agent for the State of Alabama was approved by the department of the interior at Washington. The bill further averred that the defendants had no title to the land, either legal or equitable ; that an attachment suit had been commenced to try the title to said lands ; and that the defendants were mining and selling coal therefrom, and were insolvent. A motion was made by the defendants to dismiss the bill for the reason that the bill appears to have been filed without any legal authority for so doing. On the hearing of this motion there was submitted a letter from Thomas G. Jones, governor, addressed to Hon. John Caldwell, in which he was authorized and directed to "bring all such suits, either at law or in equity, as in your judgment may be deemed advisable to recover the possession of school indemnity lands." The bill showed that it was filed by John Caldwell with other counsel. This motion was overruled by the court. The defendant then interposed a demurrer, assigning several grounds, which demurrer was overruled by the court.

The defendant Mack Holmes then filed his answer, denying that he was a trespasser, but alleged that he held a legal title to said lands by virtue of having entered the same as a homestead, and commuting said homestead entry to a cash entry, upon which a final receipt or certificate had been issued to him from the land office at Montgomery, which final receipt or certificate is still in force, and has never been canceled. The answer further denies that the State has any legal title to the land in controversy for the reasons : (1) That they were selected for the State by one John H. Caldwell, who was appointed for that purpose under an agreement to give him one-fourth of the land secured by him ; that this agreement and appointment were void, and therefore the selections were void. (2) That one of the tracts of land was selected in lieu of a tract in township 17 N., range 7 W., Huntsville meridian ; but there was no such township in the State of Alabama, and that the selection of the former tract in lieu of the latter was therefore void. (3) Because, as shown by the bill of complaint, the lands in

[Holmes et al. v. The State.]

question were valuable coal lands, and, being such, could not be selected as indemnity school lands. (4) That the law required these selections to be made from the most contiguous vacant lands, but that the State did not do this. The answer was prayed to be taken as a cross bill, and that upon the final hearing thereof the title of the State be canceled; that title be vested in the defendant; and that complainants ejectment suit be perpetually enjoined.

The facts of the case as shown by the evidence were that John H. Caldwell was duly appointed agent for the State to select the school indemnity lands as approved by the act of congress; that in the discharge of his duties as such agent he selected the lands embraced in this suit, certified the same to the department of the interior, where his selection was approved, as shown by his certificate thereof, vesting the title to said lands in the State of Alabama. The evidence for the defendant was to the effect that the defenfendant holds and entered the lands in controversy as a homestead at the land office in Montgomery, Ala., in August, 1881; that thereupon he built a house on the lands, and cleared and cultivated a part of it, and resided thereon until 1884, when he made application to the register in the land office in Montgomery to commute his homestead entry into a cash entry; that the register gave proper notice of this application, and that the said Holmes made proof in support of same; that thereafter, on June 17, 1884, the application was allowed by the register and receiver, who received the commutation price to be paid by the defendant at $1.25 per acre, and that there was issued to him a final receipt therefor, signed by the · receiver, and a certificate, signed by the register that said Holmes was entitled to a patent on the lands.

Some time in the year 1886, a contest of Holmes' right under his entry was commenced by one Maxwell before the register and receiver at Montgomery, and proof was submitted to them upon said contest, but the register and the receiver were divided in their judgment, and on that account certified the contest to the commissioner of the land office for his decision thereon. The commissioner of the land office rendered a decision on October 16, 1888, and decreed that the homestead entries of the defendant Holmes should be cancelled. On the final hearing of the cause, on pleadings and proof, the court dismissed the answer of the defendant as a cross bill, and decreed that the injunction theretofore granted against the defendants should be made perpetual.

[Holmes et al. v. The State.]

LEA & BELL and J. G. CREWS, for the appellants.

SMITH & LOWE and JOHN H. CALDWELL, for the State.

COLEMAN, J.—Upon the filing of the bill by the State an injunction issued, to restrain Mack Holmes, et al. from mining and selling coal from certain lands which are described in the bill, and which are claimed as school lands, certified to the State in lieu of other school lands which had been lost. The bill was answered, and the answer prayed to be taken as a cross bill, and relief prayed against the State. The cause was submitted on the pleadings and evidence, and by final decree the injunction perpetuated. Many questions have been argued by appellant which require no more than a passing notice. By the express provision of the Constitution the State can not be made a defendant in any court of law or equity. Code, p. 22, § 15. This rule is as applicable to cross bills seeking affirmative relief against the State, as to original bills. The State is not required to give bond or security, or cause affidavit to be made, though the same might be required, if the suit was between individuals; and the written direction of the Governor of the State to the attorney of record is a sufficient authority for bringing the suit. Code of 1886, § 2573.

The legality or policy of the statute, under which John H. Caldwell, was employed by the State to secure lands in lieu of lost school lands, can not be questioned by respondents in this proceeding; nor are mere irregularities, if any exist, in the proceedings with the general government by which the land in controversy was certified to the State of Alabama available, to respondents. The bill avers and the proof shows, that the tract of land in controversy was selected and the selection approved, and the list duly certified. Under the law until cancelled or annulled this was sufficient to vest in the State, whatever of right and title the general government held and owned. U. S. Rev. Stat, 2449; McCreery v. Haskell, 119 U. S. 327; Wis. R. R. Co. v. Price County, 133 U. S. 496.

The vital question is, whether the State by virtue of the selection and approval and certified list, acquired a title superior to that of respondents. To determine this question it becomes necessary to enquire into the right and title of the respondent, acquired by an alleged homestead entry, and whether the same if any were acquired, were subsequently cancelled, by the general government, prior to the

time, when the land was certified to the State.   We do not doubt the power of the Interior Department to cancel inchoate rights acquired by homestead entry, in all proper cases, and that, in arriving at and declaring its conclusions, it exercises in some respects a *quasi* judicial power.   Its judgments are not conclusive as *res adjudicata* upon the courts of the country, but are entitled to great consideration.—*H. & D. R. R. Co. v. Whitney*, 132 U. S. 357; *Knight v. U. L. Association* 142 U. S. 178; *Lee v. Johnson*, 116 U. S. 48.

We are of opinion that the conclusions of the Land Department upon a question before it apparently within the scope of its authority are *prima facie* correct, and the party who assails their correctness, must show affirmatively that they are illegal and unauthorized.   *United States v. Steenerson*, U. S. Cir. Ct. of Appeals, Vol. 1, p. 557 ; *Aldrich v. Aldrich*, 37 Ill. 32; *Lee v. Johnson*, 116 U. S. 48; *Quinlan v. Conlan*, 104 U. S. 420; *Steel v. Smelting Co.*, 106 U. S. 447.

Without determining whether the facts averred in the answer of Holmes, if sustained by the proof, present a case in which the Land Department had no authority to cancel his certificate, it is very clear, the proof adduced falls far short of sustaining the averments of the answer.

It is not averred in the answer that respondent was not duly notified to appear and show cause why his entry should not be cancelled, nor that he did not have full opportunity to appear and contest the motion to annul and cancel it, nor is any reason given, if he did not, why he failed to do so. Although it is averred in the answer that respondent made the necessary permanent improvements and continuously resided upon the land from the date of his entry (to-wit: 1881,) to April, 1884, when the same was commuted from a homestead entry to a cash entry, and the payment of the cash entry, there is no proof in the record of the truth of these averments, other than such as may be inferred from the register's and receiver's certificate and receipt.   The government had not issued to him a patent to the land, and while the certificate and receipt may have entitled him *prima facie* to the patent, they did not conclude the Land Department from investigating and determining the truth of the facts upon which the certificate and receipt were issued, and the *bona fides* of his homestead claim, and if found fraudulent or untrue and insufficient to cancel the same.   The burden resting upon the respondent in these respects has not been met or overcome.   It is contended in argument that there is no sufficient proof of the judgment

or order of cancellation. Under the pleadings we do not consider this an open question, dependent upon extraneous proof.

The bill charges directly that his pre-emption claim was cancelled by the proper department, and contains what purports to be a copy of a letter from the assistant secretary to Holmes informing him of the order of cancellation. The answer no where denies, that the order of cancellation as averred in the bill was made. Its response to this averment is, "that if any such cancellation was made, it was not only without authority, but upon insufficient proof," that "his claim was never legally cancelled." The answer does not call for proof on this point. By the terms of the answer the averment is admitted and under the law, as we have declared it, the respondent assumed the burden of showing that the order of cancellation was unauthorized and illegal. In this he has wholly failed.

We find no error and the decree is affirmed.