# Alabama Girls' Industrial School *v.* Reynolds.

*Bill in Equity for Accounting and Discovery.*

1. *Chancery jurisdiction; production of documents; discovery.*— Where documents belong wholly to a respondent, and the complainant has no right to them, except for the purpose of using them as evidence in the trial of a pending cause, their production depends upon the same principles which apply to discovery in general, and their production must be compelled, if

[Alabama Girls' Industrial School v. Reynolds.]

'at all, upon the admissions, in the answer, of the possession or control by the respondent of whom the production is sought. .

2. *Same; same; trustees.*—Where. both parties to a suit have equal right to the examination and inspection of documents and books of account, as in case of partners, or books kept by a trustee of the trust account, and documents acquired in a trust relation, which have to do with the pending suit, the court will, on application of either party, order their production for inspection at any stage of the suit.

3. *Trusts and trustees; accounts.*—It is the imperative duty of an accounting party, whether agent, trustee, receiver, or executor, to keep his account and vouchers in regular form, and to render every information required of him, and, when called to account, he will be compelled to produce all books, papers, writings, vouchers and other documents, which are in his possession or power.

4. *Constitutional law; State; suits against.*—If a corporation is a mere State agency, a representative of the State instituted and maintained for the exercise of a governmental function, and any judgment or decree against it must be satisfied, if at all, out of property held by it, and this property belongs to the State, though the title is *eo nomine* in the corporation,—a suit against such corporation is in effect a suit against the State, and is prohibited by the Constitution.

5. *Same; same; same.*—The constitutional provision, that the State should not be made a defendant in any suit at law or in equity, applies to a cross-bill as well as to an original bill, and prohibits the filing of a cross-bill to an original bill filed by the State.

6. *Same; construction.*—Where a provision in a later constitution was contained in a former, and had been construed by the Supreme Court before the adoption of the later constitution, such construction will be followed in its construction.

7. *Same; same; when law applies to State.*—Where the State is not expressly, or by necessary implication, included, it ought to be clear, from the nature of the mischiefs to be redressed, or the language used, that the government itself was in the contemplation of the law-makers, before a court would be authorized to put such construction on it, and the people or the sovereign are not bound by general words restrictive of prerogative rights unless expressly named.

APPEAL from the Chancery Court of Shelby.
Heard before the Hon. RICHARD B. KELLY.
VOL. 143.

The bill in this cause was filed by the appellant, the Alabama Girls' Industrial School, against the appellee, H. C. Reynolds, charging that he, as president of the school, had, in the conduct of his affairs, become largely indebted to the complainant, and asking for discovery, and the production of books and documents held by the defendant.

To the bill, the respondent filed a cross-bill, alleging the complainant to be largely indebted to him, and asking a decree therefor. The chancellor sustained the cross-bill, and, on final hearing, rendered a decree in favor of the appellee, on his cross-bill, for a large amount. From this decree, the complainant appealed.

SAM'L. WILL JOHN and WHITSON & DRYER, for appellants.

KNOX, ACKER & BLACKMAN and A. D. PITTS, contra.

TYSON, J.—The averments of the bill in this case show that a fiduciary relation existed between complainant and respondent, H. C. Reynolds, for a long period of time, and that during this period he received moneys by virtue of his office as president and agent of complainant for which he has never accounted. The bill seeks an accounting of him for these moneys and the production of certain books of account kept by him as agent or trustee of complainant containing material evidence necessary to a correct statement of the account against him, which it is alleged he wrongfully and secretly took and carried away, etc.

The answer of H. C. Reynolds admits that, after his deposition as president of complainant's school and a termination of his agency, he carried the books of account kept by him to his residence, but avers that upon demand he delivered to complainant's agent all books, papers, etc., to which it was entitled. He also substantially admits that he has in his possession certain other books of account showing certain private transactions between himself and the pupils of the school.

The first point made by the appellees is that the bill does not allege that Reynolds had possession of the

books at the time it was filed; and second, that there is
no admission in his answer that he was in possession of
any documents belonging to complainant, material to
its title. These objections proceed upon the theory that
complainant's right to the production of the documents
depends upon the exercise of the jurisdiction of the court
for a discovery. Where the documents belong wholly to
the respondent and the complainant has no right to them
except for the purpose of using them as evidence in
the trial of a pending cause, in such case their produc-
tion and inspection depends upon the same principles
and doctrines which govern discovery in general. And
in such cases it is undoubtedly true that their produc-
tion must be compelled, if at all, upon the admissions,
in the answer, of their possession or control by the re-
spondent of whom the production is sought.—1 Pom. Eq.
Juris., § 205, *et seq.* But when both parties
have an equal right to the examination and in-
spection of documents and books of account, as
in cases of partners, and books kept by a trus-
tee of the trust account, and of documents acquired in a
trust relation, which have to do with a pending suit be-
tween such parties, the rule is different, and the court
will on application of either party order their produc-
tion for inspection at any stage of the suit to enable him
to prepare his case.—*Ex parte Baker,* 118 Ala. 193-4;
*Stebbins v. Harmon,* 17 Hun. (N. Y.) 445; *Livingston
v. Curtis,* 12 Ib. 121; *Kelly v. Eckford,* 5 Paige 548.

It appears by the record that complainant also made
application to the court, in the form of a motion, to com-
pel a delivery of the books of account, etc., to the regis-
ter, etc., etc., which was supported by depositions of cer-
tain witnesses, copies of which were attached to the mo-
tion. These depositions clearly and fully establish the
possession by the defendant of certain documents which
relate to the matter in controversy and the motion should
have been granted. It is not contended but that these
books of account contain evidence material to complain-
ant's case. Indeed, without them, a fair and just account-
ing between the parties cannot be had. It is an imperative
duty of an accounting party, whether agent, trustee, re-
ceiver or executor—for in this respect they all stand in

the same situation,—to keep his accounts in a regular form, to take and preserve vouchers, and to be always ready with his accounts. So a trustee is bound to render every necessary information required of him, and when he is called to account he will be compelled to produce all the books, papers, writings, vouchers and other documents which are in any way connected with the trust, and which are in his possession or under his power.—2 Bates on Fed. Eq. Proc., § 762, and authorities there cited.

The only other question necessary to be determined on this appeal is, whether the respondents can maintain a cross-bill seeking affirmative relief against the complainant?

The solution of this question depends upon whether it is immune against being a defendant to any action or suit by that provision of the Constitution which prohibits the State of Alabama from being made a defendant in any court of law or equity, (§ 14 of the Bill of Rights) notwithstanding the act of its incorporation contains an express authorization that it may be sued. If the suit instituted against it is practically and really against the State—if the judgment and decree obtained against it must be satisfied, if at all, out of the property held by it, and this property belongs to the State, though the title is *eo nomine* in the complainant as an agent of the State,—then clearly to permit an action or suit against it would be doing by indirection that which cannot be done directly. In other words, if the complainant is a mere State agency—a representative of the State instituted and maintained by the sovereignty for the exercise of a governmental function,—a suit against it is a suit against the State, just as much so as the action by *Comer v. Bankhead*, reported in 70 Ala. 493; and *Smith v. Reeves* (178 U. S. 436), where the relief sought was against the defendant "As treasurer of the State of California" to recover money paid to him as such officer. In that case the Court said: "Although the State, as such, is not made a party defendant, the suit is against one of its officers as treasurer; the relief sought is a judgment against that officer *in his official capacity*, and that judgment would compel him to pay

out of the public funds in the treasury of the State a certain sum of money. Such a judgment would have the same effect as if it were rendered directly against the State for the amount specified in the complaint."

In *Fitts v. McGhee* (172 U. S. 16), where a bill was filed by McGhee as receiver against Fitts as Attorney-General of the State of Alabama, seeking to enjoin him from instituting certain proceedings against the complainant, the Court held that the bill could not be maintained because such a suit was in violation of the eleventh amendment of the Constitution of the United States, which provides: "That the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced and prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." The Court among other things said: "To secure the manifest purposes of the constitutional exemption granted by the eleventh amendment requires that it should be interpreted, not literally and too narrowly, but fairly, and with such breadth and largeness as effectually to accomplish the substance of its purpose. In this spirit it must be held to cover, not only suits brought against a State by name, but those also against its officers, agents and representatives, where the State, though not named as such, is, nevertheless, the only real party against which alone in fact the relief is asked, and against which the judgment or decree effectively operates." See also *In re Ayers,* 123 U. S. 436.

That the complainant is a mere agency of the State, instituted and maintained for the purpose of providing for the girls of the State an industrial education, and that all the property interest in it is owned by the State, does not admit of serious doubt.—Acts 1892-3, p. 1002; 1896-7, p. 1174; 1900-01, p. 2247; *White v. Ala. Insane Hospital,* 138 Ala. 479, and authorities there cited. This being true any action or suit against it is really and substantially one against the State, and it must be held to be protected against all actions or suits where the State is protected.

The manifest purpose of section 14 of the Bill of Rights was to prohibit the legislature from passing any act authorizing the State to be sued in any court, and clearly any authorization to that end would be void because in violation of the constitutional provision. But it may be said that when the State institutes the suit and submits itself to the jurisdiction of the court, this constitutional provision has no application. That in such cases the respondent should be permitted to maintain its cross-bill and not be required to appeal to the legislature for relief. This provision first appeared in the Constitution of 1875. It seems to have been substituted for section sixteen of the Bill of Rights of the Constitution of 1868 which provided, "That suits may be brought against the State, in such manner and in such courts as may be by law provided."

In *Holmes v. State* (100 Ala. 291), the bill was filed by the State and the respondents answered and made their answer a cross-bill and prayed relief against the State. This case arose while the Constitution of 1875 was in force. The Court speaking to the point said: "By the express provision of the Constitution the State cannot be made a defendant in any court of law or equity. This rule is as applicable to cross-bills seeking affirmative relief against the State, as to original bills." See also note to *Gregg v. Jones,* 12 Am. Dec. 153, and note Ib. p. 518.

This was a construction of the provisions of the Constitution under consideration and, with this construction placed on it, the constitutional convention of 1901 reordained it. The framers of the present Constitution must be presumed to have retained it with a knowledge of that Constitution and we, therefore, feel bound to adhere to it.—*Ex parte Roundtree,* 51 Ala. 42; *Alford v. Hicks,* in MS.

But it is said that section 240 of the present Constitution definitely and expressly authorizes the complainant to be sued. That section is in these words: "All corporations shall have the right to sue and shall be subject to be sued in all courts, in like case as natural persons."

The contention is that the language here employed is general and applies to both public and private corporations. We apprehend that by the use of the broad lan-

guage it was not the intention of the framers of the Constitution to indirectly destroy the immunity reserved by the State by section 14 of the Bill of Rights; that it was not intended that the State might be subjected to suit by instituting it against a corporation, which is created by it merely to discharge one of its governmental functions. Indeed, the rule of construction sems to be where the government is not expressly or by necessary implication included, it ought to be clear, from the nature of the mischiefs to be redressed, or the language used, that the government itself was in the contemplation of the lawmakers before a court of law would be authorized to put such an interpretation upon it, and that the people or the sovereign are not bound by general words restrictive of prerogative rights unless expressly named.—*People v. Herkins*, 15 Am. Dec. 379 and note.

The case of *Lincoln County v. Luning*, 133 U. S. 529, relied on by appellees as sustaining their contention that the words of the section above quoted are broad enough to cover all corporations, has no application here. Besides, its holding is opposed to the views expressed by this court in *Agnew v. Hale County*, 54 Ala. 639.

Reversed and remanded.

McCLELLAN, C. J., SIMPSON and ANDERSON, J.J., concurring.